## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KENT GROUP PARTNERS, LLC | ) | CASE NO. 1:22-CV-01334 |
| | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITIZENS BANK, NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Before the Court is Defendant Citizens Bank, National Association's ("Citizens") Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 9). Plaintiff Kent Group Partners, LLC ("KGP") opposes the Motion as to Counts I (UCC 4A), III (Public Nuisance), and IV (Civil Conspiracy), and concedes dismissal of Counts II (Aiding and Abetting Fraud) and V (Ohio Rev. Code Ann. § 1303.44). (ECF No. 10). For the foregoing reasons, Citizens's Motion to Dismiss is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE.**

### I.    FACTUAL BACKGROUND

KGP alleges that Citizens's negligent and reckless failure to engage in reasonable fraud prevention procedures enabled hackers to steal a $6 million wire transfer intended for Sprint, one of KGP's vendors. (ECF No. 1-1, Compl., PageID#10, ¶ 8). KGP claims that, on August 13, 2020, the hackers opened a fraudulent account at Citizens under the name "Forehand Traders, LLC," a business supposedly located in Kalamazoo, Michigan. (*Id.* at PageID# 10). "Michael Forehand" was the purported owner of the business, supposedly living in Royse City, Texas. (*Id.* at PageID# 9, ¶ 3). Citizens opened the account having received only the business's Articles of Organization and tax ID number; no evidence of Michael Forehand's identity was requested by

1

Citizens or produced by the hackers prior to the account's opening.  (*Id.* at PageID# 11).  It was later determined that Michael Forehand died on February 15, 2020, and the Articles of Organization for Forehand Traders, LLC were filed approximately five months after his death. (*Id.*).

After opening the fraudulent account, hackers intercepted emails between KGP and Sprint and began communicating with KGP as if they were Sprint employees.  (*Id.* at PageID# 9, ¶ 3). The hackers provided KGP with the fraudulent account's number to receive Sprint's wire transfer. (*Id.*).  KGP addressed the wire transfer to "Sprint," but input the fraudulent account number as the transferee account.  (*Id.*).  Thus, the wire instructions contained a legally significant discrepancy: the transferee's name on the wire transfer did not match the name associated with the transferee's account number.  (*Id.*).  KGP used its bank, Capital One, to initiate the wire transfer.  (*Id.* at PageID# 13, ¶ 29).  Capital One wired the funds to Citizens, which then completed the transfer into the hacker's fraudulent account.  (*Id.*).  KGP alleges that the hackers immediately wired the funds out of the account and converted them into cryptocurrency.  (*Id.* at ¶ 31; ECF No. 10, PageID# 64).

KGP's Complaint alleges that Citizens's failure to investigate the fraudulent account's owner violates both the Patriot and Bank Secrecy Acts.  (*Id.* at PageID# 10–15).  Specifically, KGP claims that Citizens failed to comply with section 312 and the "Know Your Rights" requirements in the Patriot Act, which obligate banks to implement procedures for "verifying the identity of any person seeking to open an account." (*Id.* at PageID#10, ¶ 8; 31 U.S.C. § 5318). KGP also claims that Citizens violated 31 C.F.R. 1020.210, which requires banks to submit reports to the U.S. Department of Treasury to ensure compliance with the Bank Secrecy Act.  (*Id.* at PageID# 14, ¶¶ 13–14).  KGP claims that Citizens shirks these statutory requirements in order to

"expand its customer base, gain fees, and increase its annual revenue." (*Id.* at PageID# 13, ¶ 27). Each of KGP's causes of action is tied to Citizens's failure to meet its statutory compliance obligations, ultimately resulting in the creation of the fraudulent account used to intercept KGP's wire transfer.

## II.   MOTION STANDARD

When ruling on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Solo v. United Parcel Serv. Co.*, 819 F.3d 722, 793 (6th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))) (cleaned up).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard is not about the plaintiff's probability of success; rather, it merely demands that a plaintiff plead enough facts for the court to reasonably infer that discovery will be productive.  *Id.* at 793–94 (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

### A.  KGP Has Not Stated a Plausible Claim for Relief Under UCC 4A-207(b) (Ohio Rev. Code Ann. 1304.62(B))

Citizens attacks KGP's UCC claim by stating that UCC 4A-207(b) and its Ohio corollary, Ohio Rev. Code Ann. § 1304.62, permit a bank to complete a wire transfer based upon the account number given by the transferor if it **does not have actual knowledge** that the transferee's name and the name associated with the transferee account number differ.  (ECF No. 9, PageID# 55–56). Citizens also claims that, since KGP initiated the wire transfer with its own bank, Capital One,

3

Citizens has no legal obligation to KGP under the UCC or Title 13 of the Ohio Revised Code.  (*Id.* at PageID# 56).

In response, KGP states that Citizens **knew or should have known** that the transferee's name did not match the name associated with the transferee's account number by the fact that such discrepancy existed when KGP initiated the wire transfer, and minimal due diligence would have revealed that the names were not the same.  (ECF No. 10, PageID# 72–73; ECF No. 1-1, PageID# 13, ¶¶ 29–31).  KGP also claims that it has standing to assert its UCC claim against Citizens because the UCC does restrict KGP's available recovery to Capital One, and Citizens's failure to comply with the UCC 4A-207(b) directly damaged KGP.  (ECF No. 10, PageID# 73–74).

Ohio Rev. Code Ann. 1304.62(B)(1)[1] provides that, when the name of a wire transfer beneficiary does not match the name associated with the account number identified in the wire instructions, and the bank does not know about this discrepancy, the bank "may rely on the number as the proper identification of the beneficiary of the order.  The beneficiary's bank needs not determine whether the name and number refer to the same person."  Knowledge, as contemplated in section 1304.62(B)(1), is actual, not constructive knowledge.  Ohio Rev. Code Ann. § 1301.202(b).[2]  *See Squeeze Me Once, LLC v. SunTrust Bank*, 630 F. Supp. 3d 763, 774–75 (M.D. La. 2022) (applying a Louisiana statute identical to Ohio Rev. Code Ann. § 1301.202).  A party claiming that a bank actually knew about a name discrepancy between wire instructions and the transferee account's owner must plead particular facts supporting the claim of actual knowledge. *Flaherty v. Wells Fargo Bank Nat'l Ass'n*, 623 F. Supp. 3d 1124, 1131 (D. Nev. 2022) (dismissing claim made under identical Nevada statute when the plaintiff's complaint alleged, without

---

[1] *See* UCC 4A-207(b).
[2] *See* UCC 1-202(b).

supporting facts, that the bank "knew or should have known that the wire transfer order identified different persons by name and number").

The official comments to the Uniform Commercial Code explain that the "actual knowledge" standard promotes the efficient and economical transaction of banking business, since the great majority of wire transfers are automated and involve almost no human intervention.  UCC 4A-207, cmt. 2 (Steven D. Walt & William D. Warren 2019–20 ed.).  The risk of loss therefore falls on either (1) KGP, as the entity that dealt with the hackers directly; or (2) Capital One, upon which UCC 4A-207(c) [Ohio Rev. Code Ann. § 1304.62(C)] imposes a duty to investigate discrepancies between a transferee's name and the transferee's account holder upon receipt of wire instructions.  *Id.* at cmt. 3.  KGP is apparently aware of the latter, given its pending suit against Capital One in a New York state court.  *See Kent Group Partners, LLC v. Capital One, N.A.*, Case No. 64281-21 (Westchester Cnty.).

 Here, the Complaint alleges that "Citizens knew or should have known" that the hackers' account was fraudulent.  (ECF No. 1-1, PageID# 18, ¶ 72).  Rather than alleging facts supporting Citizens's actual knowledge of the name discrepancy, KGP's Complaint repeatedly references a series of circumstances that should have lead Citizens to eventually acquire actual knowledge: that "(a) Michael Forehand died on February 15, 2020; nearly 6 months before the Thief sought to open the Fraudulent Account; (b) the Articles of Organization for Forehand Traders LLC were filed on July 31, 2020; nearly 5 months after Michael Forehand's death; (c) the addresses for Forehand Traders LLC (Michigan) and "Michael Forehand" (Texas) were in different non-contiguous states; and (d) the EIN  issued by the Internal Revenue Service on or about August 13, 2020, nearly 6 months after Michael Forehand's death."  (*Id.*).  These allegations fall short of alleging that Citizens actually knew that the transferee's name did not match the transferee account's owner.

Without factual allegations supporting Citizens's actual knowledge of the name discrepancy, KGP cannot pursue a claim against Citizens under UCC 4A-207(b) (Ohio Rev. Code Ann. § 1304.62(B)).  Therefore, KGP's UCC claim must be dismissed. As a result, Citizens's argument that KGP does not have standing to pursue the claim is moot.

### B.  KGP Fails to State a Claim for Public Nuisance.

Citizens next claims that KGP's public nuisance claim cannot lie against a private entity engaged in private business transactions. (*Id.* at PageID# 53).  In its Reply Brief, Citizens argues that the Complaint fails to explain how the fraudulent wire transfer affected a "public right" in contravention of a particular statute, as required by the absolute nuisance doctrine.  (ECF No. 13, PageID# 81).  Citizens also states that any claim for qualified nuisance must fail due to the economic loss doctrine.  (*Id.* at PageID# 81–82).  KGP responds that the Complaint satisfies the pleading requirements for both absolute and qualified nuisance because it alleged that Citizens negligently violated the law—specifically, the Patriot and Bank Secrecy Acts—resulting in KGP's loss of $6 million.  (ECF No. 10, PageID# 68–71).

A public nuisance is "[a]n unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property."  *Public Nuisance*, *Black's Law Dictionary* (11th ed. 2019).  Ohio recognizes "unreasonable interference" to mean "those acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon a public right, an effect of which the actor is aware or should be aware." *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002).

6

At common law, the public nuisance doctrine vindicated "the interference of a general right the public held, often relating to land use and brought by the state." *Cleveland v. JP Morgan Chase Bank, NA*, Eighth Dist. No. 98656, 2013-Ohio-1035, ¶ 9 (citing Faulk Gray, *Alchemy in the Courtroom? The Transmutation of Public Nuisance Litigation*, 2007 Mich. St. L. Rev. 941, 953–54 (2007)).  Private entities generally lack standing to pursue a public nuisance claim.  *Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 776 (Ohio Ct. App. 2021); *Wooster v. Enviro-Tank Clean, Inc.*, Ninth Dist. No. 13CA0012, 2015-Ohio-1876, ¶ 14 ("[g]enerally, public nuisances are subject to abatement only by the state").  However, if a private entity suffers a special injury—a different kind of injury than that which the general public suffers while exercising the same public right—then the private entity may bring such a claim.  *Becker*, 179 N.E.3d at 776; *Wooster*, 2015-Ohio-1876, ¶ 14.

In this case, KGP is not a governmental entity capable of recovering damages on behalf of the public.  Therefore, KGP must show (assuming *arguendo* that completing a wire transfer is a "public right") that it has been injured in a manner that differs in type than those injuries suffered by the general public while making wire transfers.  *See id.*  Neither KGP's Complaint nor its Brief in Opposition to Citizen's Motion addresses this issue.[3]  KGP's Complaint does not allege a special

---

[3] None of the cases cited by KGP suggest that a public nuisance claim is available to a non-governmental entity absent a showing of a special injury. *See Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 862 (N.D. Ohio 2017) (addressing private, not public, nuisance claim); *Pizza v. Sunset Fireworks Co.*, 494 N.E.2d 1115 (Ohio 1986) (addressing public nuisance claim brought by county prosecutor and sheriff); *Combs v. Ohio Dep't of Nat. Res., Div. of Parks & Recreation*, 55 N.E.3d 1073 (Ohio 2016) (does not address public nuisance); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002) (addressing a claim for public nuisance brought by the City of Cincinnati on behalf of the general public for harm caused by the widespread accessibility of firearms to children and criminals); *In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613 (N.D. Ohio 2020), clarified on denial of reconsideration, No. 1:17-md-2804, 2020 WL 5642173 (N.D. Ohio Sept. 22, 2020) (addressing public nuisance claims brought by local and state governments and public schools on behalf of the general public for harm caused by the mass manufacture, distribution, and prescription of opioids in the United States); *Taylor v. City of Cincinnati*, 55 N.E.2d 724 (Ohio 1944) (addressing a claim for private, not public, nuisance, resulting from a car accident that the plaintiff blamed on negligently maintained roads and trees); *Barnett v. Carr*, No. CA2000-11-219, 2001 WL 1078980 (Ohio Ct. App. Sept. 17, 2001) (expressing the special injury rule but ultimately determining that a boulder on a property owner's land that exacerbated damages stemming from a traffic accident did not create a public nuisance, absolute or qualified); *Angerman v. Burick*, Ninth Dist. No. 02CA0028, 2003-Ohio-1469 (addressing private, not public, nuisance).

injury that differs from other members of the public using Citizens to make wire transfers.  This deprives KGP of standing to assert its public nuisance claim.  *See Miller v. W. Carrolton*, 632 N.E.2d 582, 586 (Ohio Ct. App. 1993) (explaining that a public nuisance damaging an individual's real property satisfies the special injury, and thus, standing requirement); *Becker*, 179 N.E.3d at 776–77 (Ohio Ct. App. 2021) (finding that private party plaintiffs lacked standing to assert public nuisance claim when they failed to satisfy the special injury requirement).  Notwithstanding this finding, neither the absolute nuisance nor qualified nuisance doctrines are satisfied by the allegations in the Complaint.

### 1. *Absolute Nuisance*

Public nuisance can be absolute or qualified.  *Cleveland*, 2013-Ohio-1035, ¶ 10.  An absolute nuisance includes "(1) a culpable and intentional act resulting in harm, (2) an act involving culpable and unlawful conduct causing unintentional harm, or (3) a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault."  *Barnett v. Carr*, No. CA2000-11-219, 2001 WL 1078980, at *13 (Ohio Ct. App. Sept. 17, 2001) (citing *Metzger v. Pennsylvania, O. & D. R. Co.*, 66 N.E.2d 203 (Ohio 1946), paragraph one of the syllabus).  Thus, absolute nuisance results in strict liability stemming from either an unlawful act or an abnormally dangerous activity.  *Id.* at *11 (citing *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 728 (Ohio 1944); *Brown v. Scioto Cnty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1159 (Ohio Ct. App. 1993)).

KGP alleges that Citizen's failure to investigate the fraudulent account's owner was unlawful, and therefore an absolute nuisance, because the Bank Secrecy Act and Patriot Act obligate Citizens to perform due diligence on each new account holder. [4]  (ECF No. 10, PageID# 69; ECF No. 1-1, PageID# 10–15).

---

[4] KGP's Complaint identifies affirmative legal obligations on the part of Citizens to verify the identity of its account holders in the Bank Secrecy Act and its associated reporting rules, along with the Patriot Act's customer identification program (CIP) and section 312 customer due diligence requirements.  In other words, the statutes and regulations that

But neither the Bank Secrecy Act nor the Patriot Act create a legal duty flowing to those victimized by fraudulent account holders. *In re Agape Litig.*, 681 F. Supp. 2d 352, 360–61 (E.D.N.Y. 2010). Rather, those statutes create a duty flowing from banks to the government. *Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006). Under the Bank Secrecy and Patriot Acts, banks have no generalized duty to seek out thieves and terrorists; banks are not, by way of statute, "guarantors of the integrity of the deals of their customers." *Id.* Neither statute creates a private right of action and, therefore, neither statute establishes a legal duty between a bank and the victim of bank fraud. *Id.*; *see Sanders v. Michigan First Credit Union Tellers*, No. 10-cv-12517, 2010 WL 3168636, at *2 (E.D. Mich. Aug. 10, 2010) ("[T]he Patriot Act also does not provide for a private right of action for its enforcement."); *Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1040 (M.D. Tenn. 2017) (dismissing company claims against bank where bank permitted a fraudulent wire transfer to occur and the funds to be immediately withdrawn because the Patriot Act does not create a common law duty of care).

KGP alleges that Citizens breached its statutory duties under the Patriot and Bank Secrecy Acts when it opened the fraudulent account. If true, this renders Citizens liable to the government, not KGP. To the extent that such breaches are unlawful, this does not render Citizens strictly liable to KGP for a third party's fraud. Holding otherwise would, in essence, require banks to guarantee its customers' (or here, third-party wire transferors') transactions: a concept that courts nationwide have summarily rejected. *See In re Agape Litig.*, 681 F. Supp. 2d at 360–61; *Marlin*, 2006 WL 2382325, at *7; *Sanders*, 2010 WL 3168636, at *2; *Belle Meade Title & Escrow Corp.*, 282 F.

---

KGP cites in its Complaint and Brief in Opposition to Citizen's Motion to Dismiss all stem from either the Bank Secrecy Act or the Patriot Act.

Supp. 3d at 1040.  This Court is unwilling to create a private right of action in these Acts where Congress intended none.  The Complaint therefore fails to state a claim for absolute nuisance.

### 2. *Qualified Nuisance*

Qualified nuisance is dependent upon a showing of negligence.  *Kubitz v. City of Sandusky*, 200 N.E.2d 322, 324 (Ohio 1964); *Love v. Pope*, No. L-99-1349, 2000 WL 966033, at *7 (Ohio Ct. App. July 14, 2000).  Like traditional negligence claims, a plaintiff claiming qualified nuisance must show *inter alia* that the defendant owed the plaintiff a duty, which it later breached. *Cleveland v. JP Morgan Chase Bank, NA*, No. 98656, 2013-Ohio-1035, ¶ 10.  As discussed above, neither the Patriot Act nor the Bank Secrecy Act creates a duty of care flowing from Citizens to KGP.  *In re Agape Litig.*, 681 F. Supp. 2d 352, 360–61 (E.D.N.Y. 2010); *Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006); *Sanders v. Michigan First Credit Union Tellers*, No. 10-cv-12517, 2010 WL 3168636, at *2 (E.D. Mich. Aug. 10, 2010).

The Complaint's allegations are more in line with a claim for qualified, not absolute, nuisance; KGP predicates its public nuisance claim on the assertion that that Citizens "owes a duty of care to protect persons who deal with Citizens against an unreasonable risk of injury which may be reasonably be [*sic*] anticipated."  (ECF No. 1-1, PageID# 20, ¶ 99).  The duty alleged is based upon Citizen's obligations under the Bank Secrecy Act and the Patriot Act; such duty simply does not exist.  Without a duty flowing from Citizens to KGP, a claim for qualified nuisance cannot succeed.  Having found that KGP has fails to state a claim for qualified nuisance, Citizens's arguments concerning the economic loss doctrine are moot.

10

In sum, KGP has not shown that it suffered a special injury entitling it to assert a public nuisance claim.  Even if it had, the allegations in the Complaint fail to state a claim for either absolute or qualified nuisance.  Therefore, KGP's public nuisance claim must be dismissed.

### C. Without Any Remaining Causes of Action, KGP's Civil Conspiracy Claim Must be Dismissed.

Citizens argues that a claim for civil conspiracy must be predicated on underlying unlawful conduct; it asserts that KGP's failure to state any other colorable claims against Citizens mandates dismissal of KGP's civil conspiracy claim as a matter of law.[5]  (ECF No.13, PageID# 86).  In defense of its civil conspiracy claim, KGP again relies on Citizens's alleged failure to comply with the Patriot and Bank Secrecy Acts.  (ECF No. 10, PageID# 71–72).

Having determined that KGP's UCC and public nuisance claims must be dismissed, KGP's civil conspiracy claim must also be dismissed.  This is because "[a] claim for civil conspiracy cannot be made [the] subject of an action unless something is done which, in the absence of the conspiracy allegations, would give rise to an independent cause of action."  *Davis v. Clark Cnty. Bd. of Comm'rs.*, 994 N.E.2d 905, 909 (Ohio Ct. App. 2013) (quoting *Cully v. St. Augustine Manor*, No. 67601, 1995 WL 237129, at * 4 (Ohio Ct. App. Apr. 20, 1995).  A civil conspiracy claim cannot succeed in the absence of an underlying unlawful act.  *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

Citizens's alleged failures to comply with the Patriot and Bank Secrecy Acts do not provide KGP with a private cause of action.  Absent an underlying cause of action to support its civil conspiracy claim, it must be dismissed.

---

[5] Citizens's Motion initially claimed that KGP's civil conspiracy claim must be made under Ohio's Racketeer Influenced and Corrupt Organizations Act ("RICO"), but its Reply Brief appears to concede that RICO is not the only manner in which a civil conspiracy claim may be asserted in Ohio.  (*See* ECF No. 9, PageID# 52).

## IV.  CONCLUSION

KGP has failed to state a claim under UCC § 4A-207, and has failed to state claims of public nuisance and civil conspiracy.  KGP also concedes dismissal of its claims for aiding and abetting fraud and an alleged violation of Ohio Rev. Code Ann. § 1303.44.  Accordingly, Citizens's Motion to Dismiss is **GRANTED**.  Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

**Dated: August 21, 2023**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

12